Walter WOE (a pseudonym), by his mother and guardian, Wilma Woe (a pseudonym), on behalf of themselves and all others similarly situated, Plaintiffs,

v.

David MATHEWS, Individually and as Secretary of the United States Department of Health, Education and Welfare, et al., Defendants.

No. 75 C 1029.

United States District Court, E. D. New York.

Jan. 16, 1976.

Morton Birnbaum, Brooklyn, N. Y., for plaintiffs.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for the Federal defendants by Cyril Hyman, Asst. U. S. Atty.

Louis J. Lefkowitz, Atty. Gen. of N. Y., for New York State Defendants by Ralph L. McMurry, Asst. Atty. Gen., New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This individual and class action concerns the constitutionality of federal and New York State statutes and State practices affecting persons civilly committed to involuntary confinement in State mental institutions. Since the inception of the action plaintiffs have filed one amended complaint and have sought leave to amend the complaint to add new individual and classes of defendants, new classes of plaintiffs and new claims for relief, and defendants have filed motions to dismiss. In order to keep the myriad claims and potential parties as distinct as possible the court will first deal with the matters relating to the original amended complaint.

### I.

Plaintiffs Walter Woe and Wilma Woe, his mother and guardian,[1] seek to represent patients between the ages of 21 and 65 who are involuntarily civilly committed in public mental institutions. As the court understands the allegations in the complaint, plaintiffs raise the following claims for relief:

(1) Woe raises a two-prong constitutional claim against the State defendants. First, Woe claims that as an involuntarily civilly committed mental patient he has a constitutional right to treatment and that his confinement in a State mental institution which affords him only custodial care violates his rights under the equal protection and due process clauses. Second, Woe claims that, as part of the right to treatment, he has a constitutional right to confinement in a general hospital which provides psychiatric services and not merely in a public institution which provides purely custodial care.[2]

(2) Woe alleges the unconstitutionality of a State statute against the State defendants. Specifically, Woe attacks provisions of the New York State Mental Hygiene Law for failure to require "adequate active care and treatment" and to provide a means to enforce the alleged right to treatment.[3]

(3) Woe alleges the unconstitutionality of the federal Medicaid statute against the federal defendants. Specifically, Woe claims that the exclusion of inmates of State mental institutions who are between the ages of 21 and 65 from the benefits of Medicaid coverage, 42 U.S.C. § 1396d(a), is unconstitutional.[4]

Plaintiffs requested declaratory judgments as to the unconstitutionality of (a) State practices in involuntary commitments, (b) the pertinent provisions of the State Mental Hygiene Law, and (c) the Medicaid exclusions for patients in State mental hospitals, and preliminary and permanent injunctions to enforce the declaratory judgments.[5]

Plaintiffs' motion for class certification was denied without prejudice to renew pending the determination whether a three-judge court should be convened pursuant to the demand for injunctions against enforcing the federal and State statutes.[6] Plaintiffs now assert that they have abandoned their demands for injunctive relief and seek only declaratory judgments from this court. Therefore, they argue, a single judge may adequately dispose of their claims, strongly urging that nothing impedes class certification.

---

1. Plaintiffs have been granted permission to use pseudonyms.

2. Amended Complaint, filed August 15, 1975, pp. 9–10; Memorandum of Law in Opposition to Motions to Dismiss, filed September 25, 1975, p. 10.

3. Amended Complaint, supra n. 2, at 15; Memorandum in Opposition, supra n. 2, at 10–11.

4. Amended Complaint, supra n. 2, at 22; Memorandum in Opposition, supra n. 2, at 11.

5. Amended Complaint, supra n. 2, at 2, 56–57.

6. Memorandum Order of July 31, 1975.

■ Despite plaintiffs' arguments, the court is not convinced that plaintiffs have abandoned the injunction aspects of their case. They explicitly request convening a three-judge court in their complaint.[7] They continue to ask that "preliminary and permanent injunctions be entered enforcing these declaratory and other judgments."[8] In contrast, see *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (single judge may grant non-coercive declaratory relief). They also seek mandamus, a form of injunction, in the nature of compelling an officer of the United States to perform a duty, 28 U.S.C. § 1361.[9] The court notes that *Kantrowitz v. Weinberger*, 388 F.Supp. 1127 (D.D.C.1974), which also tested the constitutionality of Medicaid exclusions, was an action "in the nature of mandamus and for declaratory judgment" and was decided by a three-judge court. Finally, in a related pending motion,[10] plaintiffs have already come into court for a temporary restraining order against the Secretary of Health, Education and Welfare (HEW) on grounds of unconstitutionality of a federal statute and have asserted they will seek a preliminary injunction in that matter. The court is compelled to conclude that plaintiffs are using the declaratory judgment mechanism merely as a label and are actually seeking injunctions against enforcement of federal and State statutes. Thus, this remains an action in which a three-judge court may be required.

■ Even assuming, however, that plaintiffs are correct and a statutory court is unnecessary, defendants have raised issues in their motions to dismiss which, if decided in their favor, would obviate any necessity for a three-judge court. A single judge, in any case, may determine

"(1) whether the constitutional question is substantial; (2) whether the complaint at least formally alleges a basis for equitable relief; and (3) whether the case comes within the requirement of the three-judge statute." *Abele v. Markle*, 452 F.2d 1121, 1125 (2 Cir. 1971).

Thus the court turns to a consideration of federal and State defendants' motions to dismiss the complaint.

### A. Federal Defendants' Motions to Dismiss

In his claim against the federal defendants,[11] plaintiff Woe, a 26-year old inmate of Brooklyn State Hospital, a New York State mental institution, attacks the exclusion of inmates of State institutions who are between the ages of 21 and 65 from Medicaid coverage, Title XIX of the Social Security Act as amended, 42 U.S.C. § 1396d(a). That section defines "medical assistance" for purposes of State eligibility for Medicaid payments in such a way as to provide reimbursement for services in mental institutions only for patients who are under age 21 or 65 or older.[12] Thus pa-

7. Amended Complaint, *supra* n. 2, at 2.

8. *Id.* at 57.

9. *Id.* at 2.

10. Order to Show Cause and Temporary Restraining Order, dated November 18, 1975. See Part II of this Opinion.

11. Named as defendants are David Mathews, the Secretary of HEW, and the United States.

12. 42 U.S.C. § 1396d(a) provides in pertinent part:

"(a) The term 'medical assistance' means payment of part or all of the cost of the following care and services . . . for individuals . . . who are—
"(i) under the age of 21,

\* \* \* \* \* \*

"(iii) 65 years of age or older,

\* \* \* \* \* \*

"(v) . . . permanently and totally disabled . . . "but whose income and resources are insufficient to meet all of such cost—
"(1) inpatient hospital services (other than services in an institution for . . . mental diseases);

\* \* \* \* \* \*

"(4)(A) skilled nursing facility services (other than services in an institution for . . . mental diseases); . . .

\* \* \* \* \* \*

424

tients, such as the plaintiff, who are between 21 and 65 are ineligible for medical assistance under the Medicaid statute. In contrast to the provisions excluding mental institutions, the statute does permit medical assistance to individuals, otherwise eligible, for psychiatric services received in general hospitals irrespective of age. It is this "discrimination" between patients in State mental institutions not receiving Medicaid funds and those in psychiatric facilities in general hospitals, or other Medicaid covered programs, of which plaintiffs chiefly complain.

■ The federal defendants have moved to dismiss the complaint on the grounds, *inter alia*, that plaintiffs' case is foreclosed by controlling precedent and the complaint should be dismissed for lack of a substantial federal question. Defendants to succeed must establish that plaintiffs' claims are "constitutionally insubstantial," because "prior decisions inescapably render the claims frivolous." *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973); *Maggett v. Norton*, 519 F.2d 599, 602 (2 Cir. 1975); *Brook Hollow Associates v. J. E. Greene, Inc.*, 389 F.Supp. 1322, 1327 (D.Conn.1975).

The court believes the federal defendants have met their burden, for as stated by them, "this case is on all fours, factually and legally, with *Legion v. Richardson*, 354 F.Supp. 456 (S.D.N.Y.1973), *affirmed sub nom. Legion v. Weinberger*, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973) [hereinafter *"Legion"*]; and

*Legion* is itself a binding precedent on this court." [13]

■ Contrary to plaintiffs' assertions, it is the rule of this circuit that a summary affirmance by the United States Supreme Court of a case within its obligatory appellate jurisdiction is precedent binding on a lower federal court. *Mercado v. Rockefeller*, 502 F.2d 666, 673 (2 Cir. 1974); *Doe v. Hodgson*, 344 F.Supp. 964 (S.D.N.Y.1972), *aff'd*, 478 F.2d 537 (2 Cir. 1973), *applic. dismissed & reaff'd*, 500 F.2d 1206 (2 Cir. 1974).[14]

■■ A summary affirmance is a decision on the merits of the issues on appeal, *Ohio ex rel. Eaton v. Price*, 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959); *Mercado v. Rockefeller, supra*, although not necessarily an affirmance of the rationale by which the decision was reached, *Fusari v. Steinberg*, 419 U.S. 379, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring). Even though the Supreme Court itself might give a prior summary affirmance less precedential value than an opinion of that Court treating the question on the merits, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1359 & n. 14, 39 L.Ed.2d 662 (1974), it does not follow that a lower court is free to disregard the decision. Instead this privilege lies with the Supreme Court alone. *Doe v. Hodgson, supra*, 500 F.2d at 1207–08.

Thus if *Legion v. Richardson* is a decision squarely on point, the affirmance of the dismissal of that complaint renders the plaintiffs' case so insubstantial that

---

"(15) intermediate care facilities services (other than such services in an institution for . . . mental diseases);

\* \* \* \* \* \*

"(16) . . . inpatient psychiatric hospital services for individuals under age 21 . . .

\* \* \* \* \* \*

"except as otherwise provided in paragraph (16), such term does not include—

"(A) any such payments with respect to care or services for any individual who is an inmate of a public institution (except as a patient in a medical institution); or

"(B) any such payments with respect to care or services for any individual who has

not attained 65 years of age and who is a patient in an institution for . . . mental diseases."

**13.** Memorandum in Support of Federal Defendants' Motion to Dismiss filed September 15, 1975, p. 20.

**14.** Similarly, a summary dismissal for lack of a substantial federal question. See *United States ex rel. Epton v. Nenna*, 446 F.2d 363 (2 Cir.), *cert. denied*, 404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265 (1971); *Heaney v. Allen*, 425 F.2d 869 (2 Cir. 1970); *Port Authority Bondholders Protective Committee v. Port of New York Authority*, 387 F.2d 259, 262 & n. 3 (2 Cir. 1967).

it must be dismissed. Plaintiffs have argued that *Legion* is distinguishable in that the class to be represented and the claims raised by Woe are different and the standard applied in *Legion*, in light of new "evidence," was erroneous. The court cannot agree with plaintiffs that *Legion* is either factually or legally distinguishable.

*Legion* was an attack on equal protection and due process grounds of the exclusion of State mental patients from both Medicare and Medicaid benefits. John Legion was an inmate of Brooklyn State Hospital who, with other plaintiffs, sought to represent the class of all mentally ill Americans confined in public institutions, including both the mentally ill and retarded. Woe likewise is an inmate of Brooklyn State Hospital, but plaintiffs have pared down the prospective class to consist only of those between ages 21 and 65 in State mental hospitals.[15] *Legion* alleged the unconstitutionality of both Medicare and Medicaid; Woe challenges the Medicaid exclusion alone. It is nonetheless clear that the class and claims presented by Woe are no more than subsets of those in *Legion*.[16] The essential elements of *Legion* and *Woe* are identical—constitutional attacks on an exclusion based on institutional status and type of disease. See *Kantrowitz v. Weinberger, supra,* at 1129.

In holding the challenged federal legislation constitutionally valid and dismissing the complaint on the merits, *Legion* applied the standard of review when a public welfare legislative classification is attacked, stating:

"Where a statutory classification is not conceived on peculiarly suspect grounds such as wealth or race, all that is constitutionally required is that the challenged classification or restriction bear a reasonable relationship with the objectives sought to be fulfilled by the legislation. *See, e. g., McDonald v. Board of Elections Com'rs. of Chicago,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969)." *Legion v. Richardson, supra,* at 459.

The court then reasoned that a rational justification for the exclusions could be found in the Congressional determination that care of the mentally ill in State institutions was within the traditional purview of the States and should remain so. *Id.* See U.S.Code Cong. & Admin. News, pp. 2084–87 (1965). The classification, even if imperfect, see *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), was nonetheless found constitutional. *Id.*

Plaintiffs have now come forward to argue that *Legion* applied the wrong standard of review in that the Medicaid exclusion results in arbitrary and invidious discrimination against the poor and the black and assert that there exists evidence in the form of medical and sociological data, not available when *Legion* was decided, that the statute discriminates against the socially disadvantaged.[17] It does not appear to this court, however, that plaintiffs' contentions are any more substantial than those presented in *Legion*. Plaintiffs do not assert a racially discriminatory motive on the part of Congress, see *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32

---

**15.** The smaller class still represents all State mental patients excluded from benefits. In 1972, after the decision in *Legion*, the statute was amended to provide Medicaid coverage for those under age 21. See 42 U.S.C. § 1396d(h). The issue of discrimination based on age has not been raised by Woe, and in any event, was tendered in *Kantrowitz v. Weinberger*, 388 F.Supp. 1127 (D.D.C.1974), and decided on the merits adversely to claimants.

**16.** Although plaintiffs demand benefits for State mental patients only if they receive "ac-

tive and adequate" and not merely "custodial" care, they add nothing new to their argument. Medicaid benefits, whether for medical or psychiatric services, are designed to accrue only to those receiving active care and treatment. If State mental patients were eligible, the institutions would still have to conform to an approved State plan. See, *e. g.,* 42 U.S.C. § 1396d(d) and (h); see generally, *id.* § 1396a.

**17.** Amended Complaint, *supra* n. 2, at 46–53; Memorandum in Opposition, *supra* n. 2 at 23.

L.Ed.2d 285 (1972), nor is it the function of this court to consider anew the rational judgment of Congress and to require reexamination of a precedent so squarely controlling as is *Legion.* See *Doe v. Hodgson, supra,* 344 F.Supp. at 968. Where, as here and as set forth in *Legion,* "the challenged legislation distinguishes between medically indigent persons who require short-term care and those who require long-term care, and does not on its face discriminate against blacks or poor persons [the court cannot] conclude that a patently invidious discrimination evolves from this classification." *Id.* at 459.

■ To paraphrase Judge Frankel in *Doe v. Hodgson, supra,* 344 F.Supp. at 968, "[h]owever it might be viewed as a legislative proposition, and however it might fare were it a new question for the courts, plaintiffs' complaint is defeated by the decision" in *Legion v. Weinberger,* 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973), *summarily affirming Legion v. Richardson,* 354 F.Supp. 456 (S.D.N.Y.1973). Plaintiffs' federal claims are therefore rendered insubstantial and the federal defendants' motions to dismiss that part of the amended complaint will be granted.

## B. *State Defendants' Motions to Dismiss*

The original amended complaint names the State of New York and the following State officials as defendants: the Governor of New York, the Commissioner of New York State Department of Mental Hygiene and the Director of Brooklyn State Hospital. Plaintiffs raise therein both (1) the constitutionality of a State statute, the New York Mental Hygiene Law, and (2) purely constitutional claims revolving around a "right to treatment."

■ At the outset the State defendants contend that plaintiffs' allegations are specious in that plaintiffs' sole sub-

stantial complaint is the deprivation of Medicaid payments under the alleged constitutionally defective Medicaid exclusion of mental institutions.[18] It is·true that plaintiffs couple the alleged failure of the State to provide adequate treatment of State mental patients with inadequate funding and emphasize that the availability of Medicaid to mental institutions would provide the State with the requisite funds, *ipso facto* raising the standard of care. Nevertheless, it cannot be said that plaintiffs have abandoned their claims that the State itself has the constitutional obligation to provide whatever is necessary to insure adequate and active care to individuals it has voluntarily committed to State hospitals.[19] Hence, it would be unfounded to identify these claims as illusory.

■ The State defendants also contend that plaintiff Woe is petitioning for a writ of habeas corpus and therefore must first exhaust available State remedies. Plaintiffs, however, do not contest the appropriateness of civil commitment by reason of mental illness and their claims more properly are characterized as actions to protect their constitutional rights, violated by defendants under color of law, for which they need not first seek redress in a State forum. 42 U.S.C. § 1983. See *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

### 1. *Unconstitutionality of New York Mental·Hygiene Law*

Plaintiffs' initially considered claim against the State defendants asserts that

"Articles 13, 15, 31 and 35 of the New York Mental Hygiene Law [NYMHL] are unconstitutional as applied to Woe and other involuntarily civilly committed inmates of state mental hospitals as these statutes neither provide nor require the constitutionally required

---

**18.** Memorandum of Law in Support of State Defendants' Motion to Dismiss, filed September 13, 1975, at 3–5.

**19.** Memorandum in Opposition, *supra* n. 2, at 17–18.

minimally adequate active care and treatment." [20]

Preliminarily, the court must again determine when the unconstitutionality of a State statute has been alleged whether a three-judge court is required. If injunctive relief is sought on the ground that a statute cannot constitutionally be enforced against a particular person or group, the statutory court must be convened. See *Dept. of Employment v. United States*, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). But if State officials have misapplied State law by "reason of misconstruction or have exceeded their powers, a single judge may handle the issue." *Rakes v. Coleman*, 318 F.Supp. 181, 189 (E.D.Va. 1970). Plaintiffs have not stated a substantial claim with respect to the constitutionality of the statute. Although couched in terms of constitutional defects, any viable claim under the Mental Hygiene Law would necessarily rest on the second ground. Plaintiffs have not raised this issue.

Plaintiffs first deplore the absence of a statutory right to treatment, and argue its absence makes the law unconstitutional. As the State defendants point out, any constitutional right would exist irrespective of the statutory provision. See *Welsch v. Likins*, 373 F.Supp. 487 (D.Minn.1974). Moreover, the State defendants have in fact admitted there exists a right to treatment in the statute, NYMHL §§ 15.01, 15.03.[21] It also appears to the court that NYMHL § 15.-03 does exhibit a legislative intention to provide treatment to the mentally ill, even if the contours of that right have not been concretely defined. That section provides:

"Each patient in a facility and each person receiving services for mental disability shall receive care and treat-ment that is suited to his needs and skillfully, safely, and humanely administered with full respect for his dignity and personal integrity." NYMHL § 15.03(a).

The statute further imposes upon the Department of Mental Hygiene "the responsibility for seeing that" the mentally ill, among others within its jurisdiction,

"are provided with care and treatment, that such care and treatment is of high quality and effectiveness, and that the personal and civil rights of persons receiving care and treatment are adequately protected." NYMHL § 7.05(c).

New York courts in similar contexts have ruled this provision incorporates a right to treatment. *Renelli v. Department of Mental Hygiene*, 73 Misc.2d 261, 340 N.Y.S.2d 498, 500 (Sup.Ct.1973) (mentally retarded child); *In re S*, 78 Misc.2d 351, 356 N.Y.S.2d 768 (Fam.Ct. 1974) (dangerous mentally ill child); and have recognized that "[b]y provisions of Constitution and statute (N.Y.Const., art. XVII, § 4; new Mental Hygiene Law, § 1.03 et seq.; . . .), the State is responsible for the 'care, treatment, rehabilitation, education, and training of the mentally ill'." *Kesselbrenner v. Anonymous*, 33 N.Y.2d 167, 350 N.Y.S.2d 889, 893, 305 N.E.2d 903 (Ct.App.1973) (dangerously mentally ill). See also *Usen v. Sipprell*, 71 Misc.2d 633, 336 N.Y. S.2d 848 (Sup.Ct.1972).

The plaintiffs also assert that the statute lacks any enforcement mechanism, and therefore the "right to treatment" is merely precatory.[22] It is sufficient to note the existence of possible statutory enforcement means: (1) an Article 78 Proceeding, CPLR §§ 7801–04; see *Renelli v. Dept. of Mental Hygiene, supra*; and (2) Habeas Corpus, NYMHL § 15.15; even assuming plaintiffs are correct, and it is doubtful, that NYMHL §§ 13.19, 13.21, which provides that

---

**20.** Amended Complaint, *supra* n. 2, at 15. See *id.* at 16, 56. The challenged Articles are the following: Art. 13—Regulation and Quality Control of Services for the Mentally Disabled; Art. 15—Rights of Patients; Art. 31—Hospital-ization of the Mentally Ill; Art. 35—Admission of Alcoholics to Alcoholism Facilities.

**21.** Memorandum of State Defendants, *supra* n. 18, at 11.

"No individual who is or appears to be mentally disabled shall be detained, deprived of his liberty, or otherwise confined without lawful authority, or *inadequately, unskillfully, cruelly, or unsafely cared for or supervised by any person.*" NYMHL § 13.19(a) (emphasis supplied).

and which provides for enforcement of this section by an action in New York State Supreme Court, NYMHL § 13.21, is inadequate.

The New York Mental Hygiene Law does afford the "right to care and treatment" for the mentally ill by explicit provision and New York Law does provide and has been employed to enforce that right. Plaintiffs have thus failed to sufficiently allege a claim for relief on the asserted grounds of unconstitutionality of the New York statute.

### 2. Constitutional Claims

The court now comes to what it conceives to be the heart of plaintiffs' case. Plaintiffs seek to end a self-styled "two-tiered" system of mental care in which, they allege, some persons, those voluntarily admitted to mental hospitals, receive care in equipped facilities and the remainder, involuntary committees, are condemned to custodial care in State mental institutions.

They have constructed the following argument. An involuntarily committed mental patient has a right, under the due process clause, to adequate treatment. *Wyatt v. Stickney,* 325 F.Supp. 781 (M.D.Ala.1971), *implemented in* 344 F.Supp. 373 (1972); *aff'd sub nom. Wyatt v. Aderholt,* 503 F.2d 1305 (5 Cir. 1975). Involuntarily civilly committed patients are only sent to State mental institutions; voluntary committees go to psychiatric facilities in general hospitals. Patients in State mental institutions do not receive adequate treatment; patients in general hospitals do receive treatment. Therefore patients in State mental institutions have a right to be committed in general hospitals with adequate funds for treatment, or, at a minimum, to adequate care and treatment in State institutions.

At bottom this court understands that plaintiffs seek to obtain treatment allegedly not now provided by the State by (1) the State's assumption of the burden to improve care and provide treatment in State institutions, equalizing the standard of psychiatric care between those confined within and without State institutions, or (2) a change in State practices in involuntary commitments from State institutions to other facilities, namely those which provide treatment.

The court finds no basis in law for the allegation that, without more, involuntary committees possess the constitutional right not to be committed to State mental institutions, if the State is not discriminating between similarly situated mentally ill individuals in its provision of services or funds. New York State is not constitutionally mandated to provide services to its citizens. *Cf. Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *New York Association for Retarded Children, Inc. v. Rockefeller,* 357 F.Supp. 752, 761 (E.D.N.Y.1973); *see Welsch v. Likins, supra,* at 498. But when a State does assume the burden of providing care for a dependent group, such as the mentally ill, it cannot consonant with the equal protection clause discriminate among those similarly situated mentally ill. See *New York Association for Retarded Children, Inc. v. Rockefeller, supra,* at 762; *cf. Montoroula v. Parry,* 373 N.Y.S.2d 980 (Sup.Ct.1975).

Involuntary commitment to a mental hospital, involving, as it does, a deprivation of liberty, must be scrutinized under the due process clause. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975). The right to a humane and safe living environment, *Welsch v. Likins, supra* at 502–03, the right to the least restrictive alternative in confinement, *id.,* at 501, the right to be protected from harm, *New York Association for Retarded Children, Inc. v. Rockefeller, supra,* at 764,

**22.** Amended Complaint, *supra* n. 2, at 19.

and, most recently, the constitutional obligation of the State not to "confine without more a nondangerous individual who is capable of surviving safely in freedom by himself" or with the help of others, *O'Connor v. Donaldson, supra*, 95 S.Ct. at 2494, have each been recognized by courts for those civilly confined under State authority.[23]

█ Whether the State of New York has met its constitutional obligations, whether it has treated similarly situated mental patients in an evenhanded manner, and whether it has provided adequate conditions in confinement are issues which cannot be summarily determined. As a tentative formulation it would seem encumbent upon the State as confiner to minimize the mode of confinement, *Welsh v. Likins, supra*, and to employ whatever means are necessary, including such care and treatment as are reasonably possible in the circumstances of the case, to promote the speedy release and return to liberty of the person confined. The State defendants' motions to dismiss the constitutional claims are therefore denied.

## C. *Class Action Certification*

Plaintiffs have cast this suit in the form of a class action and have repeatedly urged that certification as such be granted. F.R.Civ.P. 23. Having determined that a three-judge court is not required in this matter, plaintiffs' motion is now properly before this court for determination. The class sought to be represented is that of "involuntarily civilly committed mental hospital patients and their guardians." [24] Plaintiffs argue a class action is necessary to remove any

possibility of mootness and to assure that not only will plaintiff Woe be benefited but all those who suffer under the same plight.[25] Defendants have objected that prerequisites of F.R.Civ.P. 23(a) have not been met in that the class is not adequately defined, the interests of the members are antagonistic or diverse and a class action is not necessary.

█ The court has decided to certify a Rule 23(b)(2) class, F.R.Civ.P., limited to the class of all persons between the ages of 21 and 65 who are or who will be involuntarily civilly committed to New York State mental institutions.

Maintenance of the class will insure that not only is the representative a member of the class at the time the action was brought and the class was certified but also at the time a disposition on the merits is reached. See *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The court further believes Woe's claims to be representative of the interests of the involuntarily committed mentally ill and in toto the tests are met. Accordingly, the court hereby certifies the above named class of plaintiffs.

## II.

█ Other matters for disposition at this time are several motions of plaintiffs to amend their complaint. These motions would add new plaintiffs, defendants and causes of action. The court has decided to deny, without prejudice, the motions to amend.

First, plaintiffs attempt to add a new class of plaintiffs to be represented by Frank Foe, on a new claim against the Secretary of Health, Education and Wel-

---

**23.** The asserted "right to treatment" has not been universally recognized by courts. The Supreme Court in *O'Connor v. Donaldson, supra*, explicitly refused to affirm the existence of such a right. The difficulties are legion in assessing a "right to treatment" from defining mentally ill, adequacy or treatment itself, to determining whether treatment is necessary or helpful or the condition is incurable, and to setting standards of care. See *id.* (Burger, C. J., concurring). The statement of dollar figures cannot adequately describe or set the

standards of care; an amount of money spent is merely evidence of what may be constitutionally necessary. But although "adequacy" clearly depends on the circumstances of the case, purely custodial care must, in almost all situations, be considered inadequate.

**24.** Amended Complaint, *supra* n. 2, at 7, ¶ VIII.

**25.** Plaintiffs' Second Memorandum in Support of Motion to Maintain a Class Action, filed July 25, 1975, at 2, 11–12.

fare (HEW). The claim asserts the unconstitutionality of the federal requirement of accreditation of mental institutions by the Joint Commission on Accreditation of Hospitals (JCAH) as a condition precedent to patients' eligibility for a monthly stipend for "personal comfort items" under the federal Supplemental Security Income (SSI) program, Title XVI of the Social Security Act as amended, 42 U.S.C. § 1382(e)(1)(B); 20 C.F.R. § 405.1036(a).

The motion to amend was brought on by order to show cause with an application for a temporary restraining order to prevent the Secretary of HEW from sending a letter of intent to the inmates of Pilgrim Psychiatric Center advising that they might become ineligible for the SSI payments due to the loss of accreditation by the institution. The court heard argument on the matter as it was asserted as part of the Woe complaint, although plaintiffs sought relief on behalf of what was disclosed to be a different class of patients—those over age 65 who stood to lose the SSI stipend. The court, in a written order, denied the temporary restraining order on the grounds that plaintiffs had demonstrated neither the existence of irreparable injury nor possibility of success.[26]

The foregoing decision did not touch the merits of the new claim and no amendment of the complaint was accepted by the court. The alleged unconstitutionality of the SSI program involves claims different in nature and purpose than those which Woe has attacked, and a class different from that Woe purports to represent. Accordingly, a consolidation of such different claims and parties in the Woe action is not warranted.

Second, the motion to add new defendants presented at that time is also denied. Having been informed of the stipulated transfer of a similar action, *Yoe v. Kolb*, from the Southern District of New York to this court and the probable consolidation of that action with the present one, in which all intended State defendants would be named, the court perceives no reason to name new State defendants at this time.

Third, inasmuch as plaintiffs' motion to add new plaintiffs George Goe and Harry Hoe introduces the same class as that sought to be represented by Frank Foe and the prior amendment has been denied, the instant motion is likewise denied without prejudice. Goe and Hoe, like Foe, are inmates of Pilgrim Psychiatric Center over age 65 and their claims more properly should be considered with those of Foe. In view of the denial of the motion to amend, plaintiffs' application to allow the use of the pseudonyms George Goe and Harry Hoe, which otherwise would have been readily granted, is denied.

Fourth, plaintiffs' motion to add new defendants, the JCAH and certain officers and directors thereof, and a new claim for relief, a conspiracy among the JCAH and State and federal defendants to violate plaintiffs' civil rights, 42 U.S.C. § 1983, is denied. The claim alleges disparity in accreditation standards used by the JCAH in public and non-public institutions and the diversion of funds to "almost total non-State mental hospital purposes."[27] The "funds" involved appear to be the federal Medicaid and SSI payments presumably destined for those aided under the statute, patients in mental institutions under 21 and over 65 years of age. The claim concerns those patients who do benefit from federal Medicaid and SSI payments, the members of a class distinct from Woe. Even if the proposed classes do have members in common, this new claim will be better examined in a separate action as it raises decidedly new issues and a different array of defendants, including federal and State officers and private individuals.

In sum, despite the liberality with which proposed amendments to complaints are to be viewed, F.R.Civ.P. 15(a), the proffered additions to the com-

---

26. Memorandum and Order of November 20, 1975.

27. See Notice of Motion filed December 8, 1975; Affidavit and Brief, p. 10.

plaint here would unjustifiably interject entirely disparate issues into and tend to obfuscate the not insubstantial and difficult questions presented in the main lawsuit. The interests of neither the economy of litigation nor the forthright presentation of Woe's claims would be served by the fusion of inherently distinct claims and parties. The court thus adheres to its decision to deny, without prejudice, the motions to amend the complaint in their entirety.

Accordingly, the federal defendants' motion to dismiss the complaint as to those defendants is granted, the State defendants' motion to dismiss the complaint as to them is denied, plaintiffs' motion to amend the complaint is denied, and their motion to certify a class pursuant to Rule 23(b)(2), F.R.Civ.P., is granted but limited to the class of persons between the ages of 21 and 65 who are or who will be involuntarily civilly committed to New York State mental institutions.

So ordered.