Kenneth KOE, Lawrence Loe, Mathew Moe, and Nathan Noe (all pseudonyms), on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

Joseph A. CALIFANO, Jr., as Secretary of the United States Department of Health, Education and Welfare, et al., Defendants-Appellees.

No. 653, Docket 77–6047.

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1978.

Decided March 29, 1978.

---

Morton Birnbaum, Brooklyn, N. Y., for plaintiffs-appellants.

David L. Birch, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for State defendants-appellees.

Cyril Hyman, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty. for the Eastern District of New York, Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for federal defendants-appellees.

Before FEINBERG, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

This troubling lawsuit was brought by four aged and severely ill mental patients, involuntarily committed to Pilgrim Psychiatric Center in Brentwood, New York, against the Secretary of the United States Department of Health, Education and Welfare (HEW), a Regional Commissioner of that Department and the United States. The complaint alleges that plaintiffs, who sue under pseudonyms to protect their identity, are "very poor," over 65 and chronic patients. They seek to sue for themselves and on behalf of others similarly situated. Plaintiffs claim that defendants improperly threaten to terminate Supplemental Security Income (SSI) benefits of $25.00 a month, paid to plaintiffs under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1382(e)(1)(B). The litigation has had a complicated procedural history, which is summarized in the margin but is not significant for resolution of the controlling issue in the appeal now before us.[1] That issue is whether Judge Neaher of the United States District Court for the Eastern District of New York properly dismissed plaintiffs' complaint against these federal defendants.

This suit was precipitated by a notice from an HEW official in October 1975 to the Director of Pilgrim Psychiatric Center that the Center would no longer be eligible for federal assistance under Title XIX of the Act, 42 U.S.C. § 1396, et seq., because the Center had lost its accreditation by the Joint Commission on Accreditation of Hospitals (JCAH). As a result, the SSI $25.00/month benefits paid to plaintiffs would also stop, because such payments to otherwise eligible persons confined in a state institution are contingent upon the institution's participation in a State plan approved under Title XIX, supra. Plaintiffs' complaint alleged that Congress could not have intended to cut off these meager

1. Plaintiffs attempted to consolidate this action with *Yoe v. Kolb*, which challenged the exclusion from Medicaid coverage of state mental patients between the ages of 21 and 65. The district court dismissed *Yoe* on the ground that it raised issues that had earlier been determined adversely to plaintiff's position in *Woe v. Mathews*, 408 F.Supp. 419 (E.D.N.Y.1976), aff'd mem. sub nom. *Woe v. Weinberger*, 562 F.2d 40 (2d Cir. 1977). The four aged plaintiffs with whom this opinion is concerned entered the scene following a threatened termination of SSI benefits, described in text infra, and an abortive effort by the plaintiffs in *Woe v. Mathews*, supra, to amend their complaint to include patients over the age of 65.

The judgment of dismissal now challenged affected only federal defendants in these actions; we are told that proceedings against various state defendants remain pending in the district court.

benefits to indigent and chronically ill mental patients, committed to an institution involuntarily, merely because the institution had lost its accreditation.[2] Alternatively, plaintiffs maintained that if the Act did require such accreditation as a prerequisite to SSI payments, the statute denied plaintiffs the equal protection of the laws because—unlike voluntary patients—plaintiffs cannot choose a hospital for treatment, and thus are disproportionately victimized by the statute's application.

The threatened termination of the SSI benefits never materialized. In December 1975, the Social Security Administration discovered that another section of the law allowed the SSI payments to continue—at least temporarily.[3] Shortly thereafter, JCAH recertified the Center for a one-year period.[4] Because of these developments, the district court held that plaintiffs' action had become moot and it dismissed the complaint.

In this court, plaintiffs-appellants strenuously argue that the case is not moot because the threat of loss of JCAH accreditation continues to hang over them.[5] Indeed, plaintiffs suggested at oral argument that the present certification of their hospital is undeserved. Defendants-appellees contest this, but urge as their first point on appeal that the district court lacked jurisdiction over plaintiffs' SSI claims because plaintiffs failed to exhaust their administrative remedies. We think this contention is correct. In recent cases, the Supreme Court has made clear that suits alleging an entitlement to social security benefits must ordinarily meet the exhaustion requirements implicit in section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), see *Mathews v. Eldridge*, 424 U.S. 319, 326–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 756–67, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), even if constitutional arguments accompany the requests for relief. Otherwise, there exists no ground of federal jurisdiction upon which relief can be predicated.[6] While the courts have often been willing to find exhaustion where the issues posed are purely constitutional and

---

**2.** Plaintiffs also sought a declaratory judgment that it was improper to deny Title XIX federal aid payments to a state mental hospital on the sole ground that the hospital had lost its accreditation. This issue has not been pressed on appeal.

**3.** The Act, 42 U.S.C. § 1382(e)(1)(B), permits payment of SSI benefits to state mental hospital patients only if their institution is receiving federal Medicaid payments. HEW has taken the position that discrete sections of unaccredited mental hospitals may qualify for Medicaid payments if they can independently meet federal accreditation requirements. The portion of Pilgrim Psychiatric Center in which plaintiffs are confined received such accreditation, effective December 12, 1975.

**4.** We are advised that the term of accreditation was extended for an additional year in April 1977.

**5.** Plaintiffs' counsel points out that a monthly stipend of twenty-five dollars, while inconsequential to most, assumes a very different light in the eyes of an involuntarily institutionalized mental patient with no other source of income. The hospital provides food and shelter, but for plaintiffs and their counterparts it is only the SSI payments that make possible the purchase of personal items essential to any human existence transcending bare subsistence. The loss of such payments imposes a readily understandable burden; less obvious but perhaps no less significant are the uncertainty and feelings of rejection inflicted by the continuous threat of deprivation on those who have so little and are mentally ill.

**6.** The instant case involves Title XVI payments, whereas *Eldridge* and *Salfi* construed claims under Title II of the Act. Although 42 U.S.C. § 405(h) unambiguously renders 42 U.S.C. § 405(g) the only source of federal jurisdiction that can be invoked in suits to recover Title II benefits, it might be argued that these sections do not apply to claims of entitlement focused elsewhere in the Act. But Title XVI incorporates the judicial review provisions of Title II by reference in 42 U.S.C. § 1383(c)(3), and at least one court has assumed that the exhaustion requirements are applicable in the Title XVI context. *Wilson v. Edelman*, 542 F.2d 1260, 1269–74 (7th Cir. 1976). The Supreme Court has not restricted the Title II jurisdictional restrictions to claims for benefits under that subpart of the Act; in *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), these restrictions were held applicable to a suit challenging the constitutionality of § 1836 of Title XVIII, 42 U.S.C. § 1395*o*, which prevents certain individuals from enrolling in the Medicare supplemental medical insurance program.

some resort has been had to the administrative process,[7] neither criterion is satisfied here. Plaintiffs' complaint included an argument regarding statutory construction that the agency was certainly equipped to resolve;[8] plaintiffs have not alleged exhaustion of administrative remedies and lodged no protest with HEW regarding its threatened action prior to filing suit. Cf. *Mathews v. Eldridge*, supra, 424 U.S. at 329, 96 S.Ct. at 900 ("Through his answers to the state agency questionnaire, and his letter in response to the tentative determination that his disability had ceased, [plaintiff] specifically presented the claim that his benefits should not be terminated . . .."). We are advised that had plaintiffs turned first to the agency with their complaint, their SSI payments could not have been terminated pending final administrative decision, regardless of the Psychiatric Center's certification status in the interim.[9]

We conclude, therefore, that we must affirm the district court's dismissal of plaintiffs' complaint. We are not unmoved by the passionate argument of appellants' counsel, who has devoted years of unpaid time and effort to fighting the deplorable conditions that characterize so many mental institutions.[10] We are told that while mental patients in New York are now receiving their $25.00/month, thousands of others, who are involuntarily confined in non-accredited hospitals elsewhere in the nation, have been denied these payments.[11] Plaintiffs' counsel also argues that no attorneys will represent these unfortunate people in pressing their claims administratively, either because there is little hope of recouping a fee or because of a discriminatory attitude, perhaps unconscious, against the mentally ill.[12] If it is true that counsel cannot be obtained for such patients, it is cause for sadness and the immediate attention of the organized bar in those locations where SSI benefits are being denied because of loss of hospital accreditation. Obviously, whatever may be their legal right to SSI benefits, patients in that situation are innocent victims of the deficiencies of the hospital. The Congress might well wish to reconsider the utility of making such persons pawns in the ongoing struggle to persuade states to upgrade their psychiatric treatment facilities. But in the present posture of the case before us, we have no choice but to affirm the judgment of the district court.

---

7. See, e. g., *Mathews v. Diaz*, supra; *Mathews v. Eldridge*, supra; *Weinberger v. Salfi*, supra.

8. Plaintiffs alleged that Title XVI did in fact require JCAH accreditation of hospitals housing involuntarily committed inmates in order for such inmates to retain SSI eligibility. Plaintiffs' constitutional claims are posed only "in the alternative, if the statute does require [termination of benefits]."

9. See 20 C.F.R. § 416.1336. At an earlier stage of this litigation, in which plaintiffs' counsel participated, Judge Neaher filed an opinion which cited this section and explained its utility for patients in plaintiffs' position. *Woe v. Mathews*, 75–C–1029, at 4 (E.D.N.Y. Nov. 20, 1975), appeal dismissed, No. 75–8335 (2d Cir. Nov. 24, 1975).

10. Counsel for plaintiffs, who is also a doctor, commenced his exertions long before the plight of institutionalized mental patients had attracted significant public attention and concern. See Birnbaum, *The Right to Treatment*, 46 A.B.A.J. 499 (1960), described by Judge Wisdom as "[t]he seminal article" in *Donaldson v. O'Connor*, 493 F.2d 507, 519 n.12 (5th Cir. 1974), vacated and remanded, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

11. Plaintiffs unsuccessfully moved in the district court for class designation; the parties dispute whether the proposed class was statewide or national in scope. In view of the district court's lack of jurisdiction over plaintiffs' SSI claims, certification would have been improper.

12. Counsel characterizes this attitude as "sanism," and urges that it afflicts the entire legal system.