CONCERNED CITIZENS FOR CREED-
MOOR, INC., Barbara Adler, by her
father Irving Adler, Daniel Karey, by his
mother Mary Karey, Carol Halpert, by
her father Michael Halpert, Shirley Tay-
lor, by her mother, Eula Taylor, Plain-
tiffs,

v.

Mario CUOMO, individually and as Gover-
nor of the State of New York; William
Morris, individually and as Acting Com-
missioner of the Department of Mental
Hygiene of the State of New York; Mi-
chael Dobner, individually and as Acting
Director of Creedmoor Psychiatric Cen-
ter, Defendants.

No. 78 CV 2188 (ERN).

United States District Court,
E.D. New York.

Aug. 31, 1983.

Alan G. Apfel, Great Neck, N.Y., for
plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y.
by Robert S. Hammer, Asst. Atty. Gen.,
New York City (John Petrila, Deputy Coun-
sel, and Seth Abrams, Asst. Counsel, N.Y.
State Office of Mental Health, New York
City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Concerned Citizens for Creedmoor, Inc., is
a not-for-profit corporation organized by
and comprised of parents and representa-
tives of mentally retarded and mentally ill
patients at Creedmoor Psychiatric Center
("Creedmoor"), a State residential institu-
tion. As part of its efforts to improve the
conditions, care and treatment provided at
Creedmoor, Concerned Citizens, acting on
behalf of its members, and individual par-
ents, acting on behalf of their hospitalized
children, filed this complaint. By court-en-
dorsed stipulation, a plaintiff class was cer-
tified, comprised of all in-patients at
Creedmoor, with subclasses based upon pa-
tient residencies in particular units.

The complaint in this action presents de-
tailed allegations of Creedmoor's inadequa-
cies. Specifically, plaintiffs contend that
the institution lacks sufficient or appropri-
ate furniture and furnishings, closet and
storage space, toilet facilities, clothing,
food, books, magazines, toys, air condition-
ing, and mail service. The physical plant

consists of purportedly large and overcrowded wards, allegedly resulting in a loss of privacy, individuality and freedom of association, and contributing to asserted overall unsanitary conditions. Combined with purported understaffing, the overcrowding is said to give rise to rampant thefts, assaults, and suicides.

Plaintiffs also challenge the treatment available at Creedmoor, alleging an inappropriate overuse of medicine and seclusion; inadequate physical, occupational and speech therapy; insufficient medical, dental, nursing, psychological, and audiological services; and a lack of recreational activities and habilitative training. Again, plaintiffs cite the detrimental effects of understaffing, adding contentions that Creedmoor fails to conduct needed screening, orientation, or training for its staff, and that Creedmoor suffers from a high rate of absenteeism. Specifically, plaintiffs state that doctors are present during only one of three shifts, and that attendants improperly administer medical treatment.

Plaintiffs contend that confinement of patients under such conditions violates their constitutional rights of freedom of speech, association, and assembly under the first amendment, their right to be free from cruel and unusual punishment under the eighth amendment, their right to privacy under the ninth amendment, and their due process and equal protection rights under the fourteenth amendment. Additionally, plaintiffs cite alleged violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010 *et seq.,* Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* and unspecified provisions of the New York Mental Hygiene Law, the New York Education Law, and the Constitution of the State of New York. Plaintiffs ask for injunctive relief mandating improved environmental conditions and treatment programs, and requiring the State to submit for court approval a plan for implementing such relief.

Central to the complaint is plaintiffs' belief that State mental patients possess a right to treatment in the least restrictive environment. Ultimately, plaintiffs desire habilitative treatment programs and an overall environment designed to enable patients to return home.

■ If true, the complaint depicts a deplorable state of affairs. However, Creedmoor has been and remains accredited by the Joint Commission on Accreditation of Hospitals ("JCAH"). In *Woe v. Cuomo* (*Woe II*), 559 F.Supp. 1158 (E.D.N.Y.1983), this court held that the JCAH accreditation criteria equaled or exceeded due process requirements, and that JCAH accreditation was *prima facie* proof of adequate care. Defendants in the instant action have moved for partial summary judgment on the same ground asserted in *Woe II.* As discussed below, and for the reasons discussed in *Woe II,* defendants' motion for partial summary judgment is granted.

JCAH accreditation is awarded only after an expert survey team conducts extensive investigation and on-site inspections. *Woe II,* 559 F.Supp. at 1162 n. 6, 1163–64 (detailing the development of JCAH standards and the implementation of the accreditation program). The value of JCAH accreditation criteria as a valid measure of adequate care has been recognized by Congress, 42 U.S.C. § 1395x(f)(5), and by several courts. *E.g., Ellen S. v. Rhodes,* 507 F.Supp. 734, 739 (S.D.Ohio 1981); *Davis v. Hubbard,* 506 F.Supp. 915, 920, 923 (N.D.Ohio 1980); *Davis v. Balson,* 461 F.Supp. 842, 853 (N.D. Ohio 1978); *Welsch v. Likins,* 373 F.Supp. 487, 503 (D.Minn.1974). Moreover, the Supreme Court has recently mandated that "interference by the federal judiciary with the internal operations of [State] institutions should be minimized," and that professional determinations be regarded as "presumptively valid." *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 2461–62, 73 L.Ed.2d 28 (1982).

JCAH's ordinary accreditation procedures incorporate a thorough review of an institution, and defendants have submitted affidavits documenting the specific expert inspection conducted at Creedmoor. JCAH's governing body and membership are doctors

and medical experts; no panel of experts that this court might appoint could better determine whether Creedmoor provides adequate care. Moreover, each of the specific institutional inadequacies alleged in the complaint is addressed by one or more of the JCAH criteria.

In *Woe II,* 559 F.Supp. at 1165, this court recognized that "[c]ircumstances may exist to warrant a court to inquire into whether a JCAH accreditation decision actually resulted from a valid exercise of professional judgment, or whether JCAH standards have fallen below what is needed to ensure minimally adequate care." Those circumstances are not present in this action. Defendants' supporting affidavits attest to a regular professional review of Creedmoor's accreditation status, and the standards themselves remain the same ones found to accord with due process requirements by this court in *Woe II.*

Plaintiffs' goal is to obtain specific, judicially imposed standards for the continued operation of Creedmoor under the supervision of a court-appointed master and panel of experts. This court, however, lacks the expertise and the authority to substitute its standards for the standards established by the medical professionals in the JCAH accreditation criteria.

Plaintiffs attempt to rebut defendants' contentions by citing *Woe v. Mathews* ( *Woe I* ), 408 F.Supp. 419 (E.D.N.Y.1976), *aff'd sub nom. Woe v. Weinberger,* 562 F.2d 40 (2d Cir.), *cert. denied,* 434 U.S. 1048, 98 S.Ct. 895, 54 L.Ed.2d 799 (1977), in which this court found that "when a State does assume the burden of providing care for a dependent group, such as the mentally ill, it cannot consonant with the equal protection clause discriminate among these similarly situated mentally ill." Specifically, plaintiffs argue that their constitutional rights under the equal protection clause mandate that patients in Creedmoor be afforded care and treatment commensurate with that provided in a consent judgment which addressed conditions in the Willowbrook State School for the Mentally Retarded. *See New York State Association for Retarded Children v. Rockefeller,* 357 F.Supp. 752 (E.D.N.Y.1973).

■ Nothing in the present record conclusively demonstrates or refutes that Creedmoor residents are "similarly situated" to the Willowbrook class or to any other, better treated mentally disabled persons in State care. In light of the myriad of needs and alternative methods of care, the factual issues presented by the equal protection claim cannot be summarily resolved.

Nonetheless, plaintiffs' specific reliance on the Willowbrook consent judgment to assert their own care and treatment rights cannot be sustained. The Willowbrook consent judgment was entered in response to findings of gross mistreatment and lack of patient care in violation of constitutional guarantees; although alleged, similar claims have yet to be proven in the present action. The State's interest in rectifying proven violations and in settling the Willowbrook class action provide a sufficient rational basis, however, to justify disparate treatment between members of the Willowbrook class and other mentally disabled patients.

Moreover, in asserting constitutional and statutory violations independent of the due process and equal protection claims, the present action differs significantly from *Woe II.* Although intervening case law necessitates dismissal of at least the asserted ground for relief under the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010 *et seq., see Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), several of the remaining claims present legal issues which cannot be resolved on the present record. *See, e.g., Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (20 U.S.C. § 1401 *et seq.*); *Association for Retarded Children of North Dakota v. Olson,* 561 F.Supp. 473 (D.N.D.1982) (right of privacy, property, and association); *Project Release v. Prevost,* 551 F.Supp. 1298 (E.D.

N.Y.1982) (State statutory rights); *see Youngberg*, 102 S.Ct. at 2458 n. 19.

Accordingly, defendants are granted partial summary judgment as above indicated, and the parties are directed to appear in Chambers on September 21, 1983, at 10 A.M., for a pretrial conference to discuss disposition of the remaining issues in this action.

SO ORDERED.