**Frank FOE, etc., et al., Plaintiffs,**

v.

**Mario CUOMO, etc., et al., Defendants.**

**No. 75 Civ. 1029 (JRB).**

United States District Court,
E.D. New York.

Nov. 17, 1988.

Michael S. Lottman, E. Hartford, Conn., Scheinberg, Schneps, DePetris & DePetris, Riverhead, N.Y. (Murray B. Schneps, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Arnold D. Fleischer, Caren Brutten, Asst. Attys. Gen., of counsel), Nancy H. Halleck, New York State Office of Mental Health, Albany, N.Y., for defendants.

## OPINION AND ORDER APPROVING SETTLEMENT

BARTELS, District Judge.

### I. BACKGROUND

This case has a long and tortured history. It was commenced on June 27, 1975, on behalf of all patients involuntarily committed to the care and custody of New York State mental hospitals, as a broad-scale challenge to the constitutionality of the policies and operation of the public mental health system in New York State. By amended complaint filed August 15, 1975, plaintiffs claimed that defendants had deprived involuntary patients of their constitutional rights to adequate care and treatment while under the care and custody of the State of New York.

On January 16, 1976, the Honorable Edward R. Neaher of this District certified the lawsuit as a class action. *See Woe v. Mathews,* 408 F.Supp. 419 (E.D.N.Y.1976), *remanded in part and dismissed in part sub nom., Woe v. Weinberger,* 556 F.2d 563 (2d Cir.1977), *aff'd,* 562 F.2d 40 (2d Cir.1977), *cert. denied sub nom., Woe v. Califano,* 434 U.S. 1048, 98 S.Ct. 895, 54 L.Ed.2d 799 (1978). *But see Woe v. Cuomo,* 559 F.Supp. 1158 (E.D.N.Y.) *mandamus denied sub nom., In re Woe,* 723 F.2d 895 (2d Cir.1983) *and* 723 F.2d 895 (2d Cir.1983), *aff'd in part, rev'd in part, Woe v. Cuomo,* 729 F.2d 96 (2d Cir.1984), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984). The class certified consisted of all persons between the ages of 21 and 65 who were then or would come to be involuntarily civilly committed to New York State mental institutions. 408 F.Supp. at 429. The persons affected by the settlement agreement *sub judice* are in effect a subclass consisting of involuntarily civilly committed patients between the ages of 21 and 65 who are being treated at the Bronx Psychiatric Center, Bronx, New York ("BPC"). The defendants in the present case are state officials who have varying degrees of responsibility for either the operation of BPC, the promulgation and implementation of policies pertaining to the plaintiff class, or the provision of services to the plaintiff class. Plaintiffs' claims against the state officials are derived from the first claim of the Amended Complaint dated August 15, 1975, at 9–14, which essentially alleges denial of constitutionally adequate care and treatment in violation of the due process clause of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiffs claim that, *inter alia,* a shortage of qualified staff, overcrowding of hospital living units, lack of adequate health care, and failure to provide active treatment amount to a denial of the right of involuntarily civilly committed patients to constitutionally adequate care and services. Defendants deny these allegations.

For nine years, from 1975 to 1984, extensive motion practice ensued, *see Woe v. Cuomo,* 729 F.2d 96, 99–101, culminating in the dismissal of the action *in toto,* includ-

ing the claims going to institutions that had lost accreditation by the Joint Commission on Accreditation of Hospitals ("JCAH"). *Id.* at 101. On February 22, 1984, the Court of Appeals remanded to this Court plaintiffs' claims concerning the adequacy of care and treatment at New York State mental hospitals that lose accreditation either by JCAH or by the federal Department of Health and Human Services ("HHS"). *See Woe v. Cuomo,* 729 F.2d 96, 108 (2d Cir.1984).

On April 9, 1985, plaintiffs moved for, *inter alia,* a preliminary injunction against further admissions to BPC, which at that time had lost JCAH and HHS accreditation.[1] After seven days of hearings, Judge Neaher found that the quality of care at BPC had fallen below constitutionally adequate standards, largely as a result of "chronic and persistant overcrowding...." *Woe by Woe v. Cuomo,* 638 F.Supp. 1506, 1512 (E.D.N.Y.), *aff'd in part, remanded in part,* 801 F.2d 627 (2d Cir.1986). *See also* 801 F.2d at 628. On July 1, 1986, Judge Neaher enjoined defendants from admitting any additional patients to BPC. 638 F.Supp. 1506.

On September 29, 1986, the Court of Appeals affirmed the District Court's factual findings but stayed enforcement of the injunction prohibiting further admissions. 801 F.2d 627. The case was remanded to this Court to afford defendants the opportunity to present evidence concerning the constitutionality of care at BPC, to consider the implications of and alternatives to a freeze on admissions to BPC, and for a trial on the merits. *Id.* at 630–31.

Hearings on remand commenced November 19, 1986. On December 2, 1986, Judge Neaher recused himself. The case was first reassigned to the Honorable Henry Bramwell, and upon Judge Bramwell's retirement was reassigned to the undersigned on January 14, 1986.

In May, 1987, Doctor Morton Birnbaum and Mr. Burton Zukerman having withdrawn as plaintiffs' attorney, and Mr. Michael Lottman having been substituted in their place, the parties began to explore the possibility of settlement. A proposed settlement agreement (the "Proposed Agreement") was filed with the Court on August 26, 1988.

On October 25 and 27, 1988, hearings were held pursuant to Rule 23(e), Fed.R. Civ.P., for the purpose of determining whether the Proposed Agreement is fair, reasonable, adequate, and should be approved by the Court. The October 25 hearing was held at BPC and was devoted primarily to the presentation of comments from members of the plaintiff class, attorneys for both sides, and BPC staff members. No objections were filed at that hearing. The October 27 hearing was held at the federal courthouse and was devoted to the presentation of comments by interested parties who are not members of the plaintiff class. Objections were filed at that hearing by Dr. Birnbaum and Mr. Zuckerman.

## II. DISCUSSION

Rule 23(e), Fed.R.Civ.P., requires Court approval before class actions may be settled.[2] The role of the Court, however, is strictly limited in that the settlement hearings may not be turned "into a trial or a rehersal of the trial," *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir.) (internal quotations omitted), *cert. denied sub nom., Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); the Court may not substitute its judgment of what is fair for that of the parties, *Evans v. Jeff D.,* 475 U.S. 717, 727, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986); and the Court may not "reopen and enter into negotiations with the litigants in the hope of improving the

---

**1.** JCAH accreditation was restored in early 1987.

**2.** Fed.R.Civ.P. 23(e) provides in pertinant part: "A class action shall not be ... compromised without the approval of the court, and notice of the proposed ... compromise shall be given to all members of the class in such manner as the

court directs." The purpose of this rule is to protect the plaintiff class from unjust or unfair settlements when representatives become fainthearted before the action is adjudicated. 7B Wright, Miller, & Kane, *Federal Practice & Procedure* § 1797 at 340 (1986).

terms of the settlement ...," *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y.), *aff'd,* 486 F.2d 1398 (2d Cir.), *cert. denied,* 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973). *See also In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 760 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987). *See generally* 7B Wright, Miller, & Kane, *Federal Practice & Procedure* § 1797 at 356–58 (1986). The Court's role consists of deciding whether the Proposed Agreement is "fair, reasonable and adequate," *Weinberger v. Kedrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied sub nom., Coyne v. Weinberger,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), and, given the plaintiff class in this case, the Court is especially mindful of its additional role as guardian to class members who may lack the intellectual resources to press objections to the Proposed Agreement. *See Id.* at 69 n. 10; *National Super Spuds v. New York Mercantile Exchange,* 660 F.2d 9, 20 (2d Cir.1981) (in reviewing settlement, court has responsibility to protect class members who cannot protect themselves).[3]

■ Keeping in mind that the law favors settlement, *Weinberger,* 693 F.2d at 73, especially in class actions, *In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 740 (S.D.N.Y.1985), *aff'd,* 798 F.2d 35 (2d Cir.1986), the Court must decide whether a proposed settlement is fair, reasonable, and adequate, by comparing the terms of the compromise with the likely rewards of litigation, *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968); *Weinberger,* 698 F.2d at 73; *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir.1974); *In re Agent Orange,* 597 F.Supp. at 762. To make this comparison, the Second Circuit has posited several criteria, those pertinant to cases involving injunctive relief being A) the complexity, expense, and likely dura-

tion of the litigation; B) the reaction of the class to the settlement; C) the stage of the proceeding and the amount of discovery completed; D) the risks of establishing liability; E) the ability of plaintiffs to obtain, and of defendants to withstand, a greater judgment; F) the range of reasonableness of the settlement in light of the best possible recovery; and G) the negotiating process that gave rise to the settlement. *See Grinnell,* 495 F.2d at 463.

■ Taking all these criteria into account, and viewing the Proposed Agreement in light of the "totality of the circumstances," *In re Agent Orange,* 597 F.Supp. at 761 (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 124 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)), the Court finds the Proposed Agreement to be fair, reasonable, and adequate.

### A. The complexity, expense, and likely duration of the litigation

This case, involving care and services at a large urban psychiatric hospital serving some 650 patients at any given time, is precisely the kind of case where settlement would serve the plaintiff class and the interests of justice. Establishing the unconstitutionality of care at BPC would require a showing that the care at BPC constitutes a substantial departure from accepted professional judgment, practice, or standards, *see Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1981); *Woe v. Cuomo,* 729 F.2d at 105, and would, perforce, involve the calling of numerous witnesses to establish a pattern or practice of substandard conditions at the BPC, inevitably followed by a "battle of the experts." A trial would be complex, lengthy, and expensive, and, even if favorable to plaintiffs, certainly would not end the matter since defendants have already displayed their interest in resorting to the appellate process. Approval of the Proposed Agreement is indicated.[4]

---

3. In partial satisfaction of its responsibilities as guardian, the Court itself toured the BPC in mid-September, 1988.

4. *See Harris v. Pernsley,* 654 F.Supp. 1042 (E.D. Pa.1987) (settlement of class action which required adoption and implementation of procedures and policies to reduce population of state

### B. The reaction of the class to the settlement

To date, no written objections to the settlement have been received from or on behalf of members of the plaintiff class although such objections were solicited in the Notice of Proposed Class Action Settlement and Fairness Hearings. At the hearings held on October 25 and 27, no substantive objections were made to the provisions of the Proposed Agreement (except for the objections of Dr. Birnbaum and Mr. Zuckerman, dealt with *infra*), and the individualistic concerns that were raised, such as they were, did not raise any serious reasons why the settlement might be unfair. *See* Wright, Miller, & Kane, *supra* § 1797.1 at 412 (court must independently evaluate whether objections raised suggest serious reasons why proposal might be unfair).

### C. The stage of the proceedings and the amount of discovery completed

The BPC aspects of this case are three years old and the state-wide class action as a whole is now entering its fourteenth year. The conditions at BPC have already been the subject of a trial, appeal of preliminary relief, and six days of further hearings on remand. Mr. Michael Lottman, attorney for the plaintiff class, has reviewed the District Court and Court of Appeals decisions in this case; the record of the trial before Judge Neaher and of the hearings on remand; the pleadings and appellate briefs; reports on care and conditions at BPC compiled by JCAH, HHS, and the New York State Commission of Quality of Care for the Mentally Disabled, as well as internal documents of BPC and the New York State Office of Mental Health; and, in response to an informal discovery request, was provided with, and has reviewed, hundreds of pages of additional documentation, including hospital policies and manuals, statistics, and external and internal reports. Declaration of Michael Lottman, dated October 24, 1988 ("Lottman

Affid."), ¶ 6. Mr. Lottman estimates that he reviewed a total of 10,000 pages of relevant material before making a determination regarding setlement of this case. *Id.* Furthermore, since becoming involved in this case Mr. Lottman has personally visited the BPC to meet with administrators, talk to patients, and inspect living units and program areas on four separate occasions. *Id.* Mr. Lottman is also very experienced in this type of case, which gives him a sound foundation for evaluating all this data.

Clearly, then, both the knowledge of plaintiffs' counsel and the proceedings themselves have reached a stage so that an intelligent evaluation of the case and the propriety of settlement can be made.

### D. The risks of establishing liability

Under the present set of circumstances it is not at all certain that plaintiffs would prevail in a trial on the merits. *See* Affidavit of Arnold D. Fleischer, dated October 21, 1988 ("Fleischer Affid."), ¶ 4. Subsequent to Judge Neaher's 1986 finding of unconstitutionally inadequate care at BPC conditions have changed materially. The most important of these changes are that the BPC patient poulation in relation to bed space has decreased and JCAH accreditation has been restored. Since plaintiff's would be an uphill battle at trial, *see Woe v. Cuomo*, 729 F.2d at 106 (JCAH accreditation is *prima facie* proof of adequacy of care), the risks of establishing liability clearly counsel approval of the Proposed Agreement. *See Harris v. Pernsley, supra* (*inter alia*, uncertain outcome of litigation indicated fairness, adequacy, and reasonableness of agreement); *Wilder v. Bernstein*, 645 F.Supp. 1292, 1341 (S.D.N.Y.1986) (*inter alia*, uncertainty of establishing liability indicated fairness of agreement settling class action which challenged as unconstitutional city's statutory scheme for provision of child care services), *aff'd*, 848 F.2d 1338 (2d Cir.1988); *In re Agent*

---

prison system and maintain population at agreed-upon levels was fair, adequate, and reasonable, and would be approved when litigation of the constitutionality of the conditions of confinement in the prison system would have been very complex, extremely expensive, and most likely of great duration), *aff'd*, 820 F.2d 592 (3d Cir.), *cert. denied sub nom., Castille v. Harris,* —— U.S. ——, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987).

*Orange,* 597 F.Supp. at 857 (difficulty in establishing plaintiffs' case and the uncertainties associated with a trial indicated that settlement was in the interest of the plaintiffs and the public).

### E. The ability of plaintiffs to obtain, and of defendants to withstand, a more demanding judgment

The Court believes that the Proposed Agreement will result in significant benefits to the plaintiff class and will remedy many of the problems at BPC for which relief was demanded in the complaint. The Proposed Agreement confers upon the plaintiff class general rights and entitlements to adequate care and decent treatment; prohibits discrimination with respect to any rights conferred; requires BPC to maintain JCAH accreditation and to attempt to regain HHS accreditation during the lifetime of the settlement agreement; sets specific population limits for each ward as a whole; holds BPC to at least the same overall staff-to-patient ratio that existed when JCAH accreditation was reinstated; requires adequate treatment and discharge planning, programming designed to equip patients for more independent functioning, and enhanced efforts to ensure the quality of such programming; mandates adequate programs and alternative placements for BPC patients whose primary diagnosis is mental retardation; and provides due process protections with respect to medical and treatment decisions, including ward assignments and limitations on rights and privileges. Foremost, however, the Proposed Agreement is actually designed to *remedy,* not just forbid, BPC's chronic overcrowding: programming and alternative placements are to be implemented to expedite the ulimitate goal of getting patients out of the BPC, and a schedule of capital improvements incorporated into the Proposed Agreement is designed to make more room for the patients who remain at the BPC. Moreover, the Proposed Agreement provides for continuing jurisdiction by this Court of the implementation of the agreement.

There are constitutional and practical constraints on this Court's ability to fashion a remedy in the present case. *See Eckerhart v. Hensley,* 475 F.Supp. 908, 915 (W.D.Mo.1979) (citing cases), *aff'd,* 664 F.2d 294 (8th Cir.1981), *vacated and remanded on other grounds,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), where the court explained that the role of federal courts is not to sit as the supervisor or administrator of state-run institutions, and that the court is ill-equipped to deal with the complex problems of running a state health care facility. The Proposed Agreement is reasonably similar, perhaps even *better,* than the decree the Court could or would have issued after a trial on the merits. Furthermore, the extraordinary demands being placed on the public mental health system and the budget crisis that may be facing the state and federal governments, make it highly unlikely that the defendants in the near future will have the capacity to do more than they are undertaking to do in the Proposed Agreement. As the parties themselves point out, "[b]y holding out for more, plaintiffs could well wind up with less." Joint Memorandum of Law in Support of Proposed Settlement, dated October 25, 1988, at 14.

### F. The range of reasonableness of the settlement in light of the best possible recovery

The plaintiffs do not want a money judgment and they do not want a court decree. What the plaintiffs want is enforceable rights to adequate care and services. As discussed *supra,* the Court is of the opinion that the Proposed Agreement definitely confers benefits upon the plaintiff class and confers those benefits now. Further delay would only be inimical to the interests of the plaintiff class. *See Jones v. Amalgamated Warbasse Houses, Inc.,* 97 F.R.D. 355, 359–60 (E.D.N.Y.1982), *aff'd,* 721 F.2d 881 (2d Cir.1983), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984) (value of having benefits accrue from complex litigation *now* rather than receiving same or lesser benefits at *later* date must be considered favorably in assessing adequacy of the settlement).

In light of the foregoing, the Court finds that the range of reasonableness of the

settlement in light of the best possible recovery is high and favors approval of the Proposed Agreement. *See Newman v. Stein,* 464 F.2d at 693, where the court points out that in any particular case "reasonableness" encompasses a range of possibilities.

### G. The negotiating process that gave rise to the settlement

Given the Court's limited role under Fed.R.Civ.P. 23(e), "attention has also been paid to the negotiating process by which settlement was reached, and courts have demanded that the compromise be the result of arm's length negotiations...." *Weinberger,* 698 F.2d at 74. Counsel for both parties aver that the Proposed Agreement is the product of one year's close and frank settlement negotiations, Fleischer Affid. ¶ 5; Lottman Affid. ¶¶ 11 & 12, enabling the parties to make an informed judgment as to the advantages of settling rather than proceeding to trial, Fleischer Affid. ¶ 5; Lottman Affid. ¶ 11.

As there were protracted settlement negotiations, and as there is no evidence of collusion, the Court finds the Proposed Agreement to be the product of arm's length negotiations. *See Weinberger,* 698 F.2d at 74.

### H. The notice of proposed settlement

■ Fed.R.Civ.P. 23(e) requires notice of proposed settlement of class actions to be given to members of the class. The notice must fairly apprise the class members of the proposed settlement and of the options that are open to them in connection with the proceeding. Furthermore, the notice must fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it. *Weinberger,* 698 F.2d at 70.

The Notice of Proposed Settlement of Class Action and Fairness Hearings speaks for itself—it is accurate, neutral, and complete. The painstaking efforts of counsel for plaintiffs to alert the plaintiff class to the Proposed Agreement and its terms have been brought to the attention of the Court and need not be recounted here. *See*

Attorney's Declaration Re: Notice of Hearing, dated October 19, 1988; Certification of David Cohen, dated October 25, 1988. Suffice it to say that the Court finds that the notice given to the plaintiff class was more than adequate and fulfilled the requirements of Fed.R.Civ.P. 23(e) and due process.

### I. The Birnbaum/Zuckerman Objections

■ By letter to the Court dated October 24, 1988, Dr. Morton Birnbaum and Mr. Burton Zuckerman made the following objections to the Proposed Agreement: 1) Precatory in nature; 2) Does not address overcrowding and understaffing; 3) Does not call for an HHS survey; 4) Has only four year estimated duration; 5) Does not provide for adequate, individualized care; 6) Does not provide for the appointment of a master; and 7) Does not prevent the transfer of patients to upstate facilities away from the BPC and continuity of care. Other, more particularized objections were made which may be fairly considered subsumed in the seven objections listed above.

At the outset it should be noted that neither Birnbaum nor Zuckerman have standing in this case. They claim to represent "R.L.", who allegedly is a patient at BPC. If R.L. is indeed a member of the plaintiff class as Dr. Birnbaum claims, it is clear that Mr. Lottman is the proper representative of R.L.

Nevertheless the Court has carefully considered the proffered objections and, to the extent that they are meritorious, finds that they are adequately addressed by the Proposed Agreement as discussed *supra.* Many of the objections do not recognize the recent improvements that have taken place at BPC, particularly the reinstitution of JCAH accreditation. Furthermore, the underlying basis of certain of the objections is the apparent belief of Dr. Birnbaum and Mr. Zuckerman that the Court must assume the role of managing the BPC *ad infinitum.* The Court, of course, has no authority to do so.

Dr. Birnbaum and Mr. Zuckerman also object to the Court's alleged refusal to permit the New York Civil Liberties Union

and the law firm of Sullivan & Cromwell to participate as co-counsel for the plaintiff class. This allegation is false. Sullivan & Cromwell never applied to become counsel in this case, and the Civil Liberties Union, after strenuous solicitation by the Court to represent the plaintiffs, decided it could not enter the case due to chronic understaffing.

Finally, Dr. Birnbaum and Mr. Zuckerman object to the Court's earlier finding that they have withdrawn as counsel for the plaintiff class. This issue, as well as the issue of the Civil Liberties Union and Sullivan & Cromwell, is irrelevant here as it does not go to the fairness, reasonableness, or adequacy of the Proposed Agreement. In this regard, however, the Court simply reiterates its statements contained in the order of May 11, 1988, and in the minutes of the hearings held on May 9 and August 29 of 1988.

## CONCLUSION

The Court having considered the foregoing and the submissions and presentations of respective counsel for plaintiffs and defendants as well as the statements made at the hearings held on October 25 and 27, 1988, it is hereby ORDERED that:

1. The Court approves the terms of the settlement with respect to the Bronx Psychiatric Center, as embodied in the Stipulation of Settlement dated November 15, 1988, as being fair, reasonable, and adequate;

2. The parties are directed to implement the settlement in accordance with the terms thereof; and

3. The Court shall retain continuing jurisdiction over the action for all purposes.